STUTSMAN COUNTY, Respondent, *v.* MANSFIELD *et al.*, Appellants.

1. **Pleadings—Construction of Complaint on Objection to Evidence.**

   When it is objected to evidence at the trial that the complaint does not state facts sufficient to constitute a cause of action, a greater latitude of presumption may be indulged to sustain it, than when the same objection is made by demurrer.

2. **Same—Complaint on Treasurer's Bond—Sufficiency.**

   A bond given by M. was "conditioned for the faithful and impartial discharge of the duties of the office of county treasurer, and a true and correct accounting for all moneys, credits, accounts, and property which should come into his hands, and a delivery of the same over according to law," etc. The complaint, in an action upon the bond, after averring non-performance of each of the conditions, alleged that M. did not pay over the balances in his hands to the territorial, county, and school-district officers upon receiving proper vouchers; that from taxes and other sources, as such treasurer, he had received $9,232.84, over and above all moneys legally paid out; that the board of county commissioners had directed him to settle with them; that he neglected and refused so to do; that he had presented a statement showing the above balance, which he failed to account for or produce; that demand therefor had been made; that, having failed to pay said balance, the board directed suit to be instituted against him and his sureties; that afterwards the said board removed him from office, declared the same vacant, and appointed one W. to fill the vacancy thereby created. *Held*, that the complaint was good on an objection to evidence, that it did not state facts sufficient to constitute a cause of action under the rule applicable when the objection is raised in that form.

**3. Same—Duty of Treasurer—Pol. C. c. 21, § 95; c. 5, § 14.**

This complaint, under Pol. C. c. 21, § 95, requiring the treasurer to settle his accounts with the board of county commissioners when directed by them, and under chapter 5, § 14, requiring him, on going out of office, to turn over to his successor all public moneys, etc., was good as to the allegations in these respects, and therefore warranted the overruling of the objection.

**4. Same—Office and Officer—Vacancy—Pol. C. c. 5, § 11.**

M. having been re-elected county treasurer and declined to qualify, (having also waived his statutory time for that purpose,) *held*, under Pol. C. c. 5, § 11, providing that there shall be a vacancy on the failure of a person elected to qualify, that a vacancy occurred which it was the duty of the board of county commissioners to fill; and, after this was done, under section 14, providing that an officer going out of office shall deliver to his successor all public moneys, etc., it was M.'s duty to at once deliver to his successor such money, etc., without demand.

(Argued May 18, 1887; affirmed May 26; opinion filed February 20, 1888.)

Appeal from district court, Stutsman county; Hon. W. H. FRANCIS, Judge.

The proceedings of the board of county commissioners of Stutsman county show that appellant W. E. Mansfield, on the 7th day of January, 1885, presented for approval his bond for county treasurer for the ensuing term, and that it was rejected. Their proceedings of the 8th show that he was present, and waived his right of ten days for qualifying as treasurer, and the waiver was accepted by the board. The office on that day was declared vacant by them, and George L. Webster was appointed county treasurer until the next general election. This suit was commenced on the 13th day of January, 1885.

*Dodge & Camp*, for appellants.

The court erred in overruling the defendants' objection to the introduction of any evidence on the ground that the complaint does not state a cause of action.

Separating the facts from the statements of evidence supposed to exist, and conclusions of law, they do not constitute a cause of action. *Clay Co.* v. *Simonsen*, 1 Dak. 403; *Bell* v. *Sherer*, 11

N. W. Rep. 861; *Clark* v. *Railroad Co.*, 28 Minn. 69, 9 N. W. Rep. 75. A county treasurer stands in no fiduciary relation to the county. The money is his own, and, if he has paid the same over as required by law, he has complied with the terms of his bond. *Rock* v. *Stinger*, 36 Ind. 346; *Shelton* v. *State*, 21 Amer. Rep. 197; *Perly* v. *County of Muskegon*, 32 Mich. 132; S. C. 20 Amer. Rep. 637.

This complaint, charging fraud and wrongful acts, must be strictly construed against the pleader.

Plaintiff does not undertake to show from what source the moneys in the hands of the defendant treasurer were derived, or to whom they belong. He simply says that they were received for taxes, and from various other sources. If, then, the defendant treasurer might by law and by virtue of his office have received moneys which the law would allow him to keep at the times mentioned in the complaint, and under the circumstances as shown by the complaint, then the defendant is not a defaulter.

The presumption is that, if the defendant did withhold money, that he acted rightfully, and the burden is upon the plaintiff to allege facts which show to the court that the moneys so withheld were withheld contrary to the provisions of the statute.

If these were moneys belonging to any district, precinct, city, town, or school-district, or to any private citizen, having been received for the redemption of tax certificates, or from various other sources, such moneys might, by the direction or sufferance of the local officers of such precinct, city, town, or school-district, or by the direction or sufferance of such private citizen, remain in the county treasury until such time as it would be required to be paid by them; and if, while allowed so to remain after the time when it should have been claimed by such officer or person as required by law, it should be lost or destroyed without the fault or procurement of the defendant, then he would not be liable. The plaintiff cannot be heard to say that this money belonged exclusively to the county of Stutsman, because it has not alleged it in the complaint. But this court will not and can-

not presume from what source it came or to whom it belonged.

The presumption, then, is that they were funds which did not belong to the county. If this be true, then the office of treasurer was not vacant, George L. Webster was not the legal suc-cessor of the defendant, and the defendant had a right to withhold from him any funds in his possession.

It does not appear, from any allegation of fact in the complaint, that the reason why the treasurer had not accounted for and paid over the balance in his hands was not because a state of facts had not yet occurred upon which he was required by law to account for or pay it over. Neither does it appear from any facts pleaded that his successor has been elected, or that the defendant is not still the treasurer of the plaintiff county, and entitled to hold the balance as such. It does not appear that any person authorized to demand and receive the money from him has made any demand, or that any order has been drawn upon him by any person authorized to draw the same which he has refused to pay. *Supervisors* v. *Kirby,* 25 Wis. 498; *Brown* v. *Stebbons,* 4 Hill, 154; *Coe* v. *Rankin,* 5 McLean, 354. See also, *Mutual Loan & Building Ass'n* v. *Price,* 26 Amer. Rep. 703.

The complaint apparently seeks to allege two causes of action; one a failure to produce moneys, and the other a failure of the treasurer to pay over moneys in his hands to his successor.

A recovery under the first cause of action would entitle the plaintiff to only nominal damages at most. It is the failure to pay over the moneys, and not the failure to produce and show them to the board, which causes an actual loss to the county. *Supervisors* v. *Kirby,* 25 Wis. 498.

The power of the county board to appoint a treasurer arises when a vacancy occurs, and this may occur by death, resignation, failure to qualify, or removal. The complaint alleges that the vacancy here was caused by removal. The power of a board to remove a treasurer exists only after a suit has been brought on his bond. Pol. C. c. 28, § 96.

And it is clear that the action of the board on the 8th of

January, 1885, five days before suit had been commenced on the bond, was illegal and void.

Upon this point and the subject of demand the case of *Supervisors* v. *Semler*, 41 Wis. 374, is instructive.

*S. L. Glaspell*, for respondent.

In construing the complaint the statute under which the bond was given in legal effect forms part of the contract, and should be considered. *County of Scott* v. *Ring*, 13 N. W. Rep. 181; *County of Wapello* v. *Bigham*, 10 Ia. 39; *Clay County* v. *Simonsen*, 1 Dak. 403; *State* v. *Nevin*, 7 Pac. Rep. 650.

There are three acts of omission on the part of the treasurer, specifically mentioned in section 95, c. 28, Pol. C., which constitute a breach of the bond, for any one of which this court has said, in *Clay County* v. *Simonsen*, 1 Dak. 429, suit may be brought. See, also, sections 51, 52, 95, c. 21.

The complaint negatives the conditions of the bond.

This of itself is a sufficient statement of a cause of action. *U. S.* v. *Spalding*, 2 Mason, 485.

If the allegations are not definite, and fail to apprise the defendant of the precise charge to be brought against him, still the complaint should not be dismissed as not stating a cause of action. Section 129, C. C. Pro., provides a remedy by motion for this.

The allegations of this complaint are similar to those in *Boswick* v. *Van Voorhis*, 91 N. Y. 353, where the court held it sufficient.

The complaint assigns two specific breaches : Failure to make settlement; failure to pay over money to his successor, with which the treasurer stood charged.

Under section 95, c. 21, Pol. C., the complaint alleges a cause of action.

If plaintiff is entitled to nominal damages, as appellants seem to admit, under this allegation, then the complaint is good.

But the complaint alleges more than a cause of action for nominal damages. It charges that at the attempted settlement

there appeared by the statement of the treasurer a deficit in his accounts of $9,232.84; that he failed to produce such sum to the board, as required by law; that he then was indebted to the county in that sum; and that he still owes the money to the plaintiff, and refuses to pay it over to the person entitled thereto.

The complaint also charges that he has failed and refused to pay over the funds in his hands to his successor in office after his removal.

This it is provided by section 14, c. 5, Pol. C., he shall do.

PALMER, J.   This action was brought under the provisions of the Code of this territory, and by the county of Stutsman, against the defendants, upon an official bond, executed by defendant Mansfield as principal and the other defendants as sureties; said bond bearing date the 2d day of January, A. D. 1883, and conditioned for the faithful and impartial discharge by said Mansfield of the duties of the office of county treasurer, and a true and correct accounting for all moneys, credits, accounts, and property which should come into his hands, and delivery of the same over, according to law, etc.

The complaint alleges, among other things, the due election and qualification of Mansfield as treasurer; that he performed the duties of such office from the 3d day of January, 1883, till the 8th day of January, 1885; setting out the bond in full; the due approval and acceptance of the same by the board of county commissioners; and then charges the breach of its conditions, as follows:

"That all the facts hereinafter set forth occurred after the execution of said bond; that said Mansfield did not faithfully and impartially discharge the duties of his said office, and did not pay over or deliver, according to law, all moneys, credits, accounts, and property that came into his hands; that he did not pay over the balances in his hands to the territorial, county, and school-district officers, upon receiving proper vouchers; that said treasurer, between the 2d day of January, 1883, and the 8th day of January, 1885, received from divers persons, and stood

charged with, divers sums of money as such county treasurer, paid to him for taxes and from various other sources, of which money he was the legal custodian by virtue of his said office, as such county treasurer, in the aggregate sum of $9,232.84 over and above all moneys which he has legally paid out; that on the 14th day of October, 1884, said board directed said Mansfield to settle with them his accounts as such treasurer, and that he failed to make such settlement, and neglects and refuses so to do; but that pursuant to such request, he did, on the 25th day of October, 1884, present a statement to said board showing a balance in the treasury at said last-mentioned date of $14,697.07, for which he presented a certified check of the James River National Bank for $5,464.23, leaving a balance of $9,232.84, which last-named sum he failed to account for, and failed to produce, and was then, and at all times since that date, indebted to said plaintiff county, and said plaintiff county has demanded of said Mansfield that he pay over said sums to the persons thereunto entitled; and he has wholly failed to pay the same, or any part thereof; that on the 7th day of January, 1885, and at the regular meeting of January, 1885, of said board of commissioners, said Mansfield made a statement in writing to said board, showing, among other things, a balance in his hands of $9,232.84 which he did not produce; whereupon the said board, by resolution, instructed the county clerk to cause suit to be instituted against said Mansfield and his sureties, and thereafter, on the 8th day of January, 1885, the said board did remove said Mansfield from the office of treasurer of said county, and declare said office vacant, and duly appointed one George L. Webster to fill the vacancy thereby created."

The defendants, answering, admit the election and qualification of Mansfield, treasurer, and the due execution of the bond as set forth in the complaint, and put in issue all other allegations of the plaintiff's complaint.

The cause came on for trial by jury in the district court, and at the proper time the defendant "objected to the introduction of any testimony in the case on the ground that the complaint

does not contain facts sufficient to constitute a cause of action."

This objection, which is presented by the first assignment of error, is in the nature of a demurrer *ore tenus* to the complaint, and the legal effect of such an objection is here presented to this court for the first time, so far as I am informed.

While it seems to be settled by adjudicated cases, in the Code states, that upon such an objection the court must determine from the facts alleged what the cause of action attempted to be stated is, and whether it is sufficiently stated, still the application of the legal rules of construction must not be overlooked. In the construction of a pleading, the maxim of the common law is that everything shall be taken most strongly against the party pleading.   1 Chit. Pl. 237.   Section 128, Code Civil Proc., however, provides : "In the construction of a pleading, for the purpose of determining its effect, its allegations should be liberally construed with a view of substantial justice between the parties."

However .much of misunderstanding or misconception the above provision may have occasioned in the minds of both the bench and bar, when attempting to apply it in testing the sufficiency of a pleading, we may not now stop to discuss.   It is sufficient to know that in all the Code states, having provisions like section 128 of our Code of Civil Procedure, if the courts have at times lost their bearings in construing it, they have at last "returned into line," and, as Mr. Pomeroy, in his work on Remedies, in discussing this question, says : "But the conflict (which at first appears) was in by far the greater part of the states confined to the earlier periods of the reform, and has virtually disappeared.   There is a substantial agreement among the courts in respect to the general principles which they have finally adopted.   Whatever difference now exists arises in the process of applying these fundamental doctrines to particular cases.   The confusion which actually prevails to a very great extent in several of the states results, not from any uncertainty, either in the general principles or in the more subordinate rules, but from an entire ignorance or disregard of them . by plead-

ers, and from a neglect to enforce them by the judges." Section 513.

And again, (section 517,) the writer continues: "The fundamental and most important principle of the reform pleading, the one from which all the others are deduced as necessary corollaries, is the following: The material facts which constitute the grounds of relief should be averred as they actually existed or took place, and not the legal effect or aspect of those facts, and not the mere evidence or probative matter by which their existence is established."

Such is clearly the rule to be applied in determining the sufficiency of a pleading when presented by a statutory demurrer for that purpose. A legal conclusion is of no effect in a pleading, and should upon demurrer be disregarded. See *Wallingford* v. *Society*, 34 Moak, 65; *Pratt* v. *Lincoln Co.*, 61 Wis. 62, 20 N. W. Rep. 726; *Quinney* v. *Stockbridge*, 33 Wis. 505; *Sheridan* v. *Jackson*, 72 N. Y. 170; *Alabama* v. *Burr*, 115 U. S. 413, 6 Sup. Ct. Rep. 81; *Pier* v. *Heinrichoffen*, 52 Mo. 333; *Emery* v. *Pease*, 20 N. Y. 62.

This rule of construction would no doubt have been applied by the district court, and this court as well, if the question had been presented by demurrer before answer. What conclusion would have been reached in such a case is unnecessary for us to determine here. No demurrer was presented before answer in this case, but a demurrer *ore tenus* was interposed when the evidence was presented upon the trial. As has been suggested when so presented, the court must pass upon the sufficiency of the allegation thus put in issue. But in construing or interpreting the language of a pleading, when presented as in the case at bar, the rule seems to be settled, that "a greater latitude of presumption may be indulged to sustain a complaint where the objection that it does not state a cause of action is taken for the first time at the trial, and after an issue of fact has been taken upon it by the answer, than where the same objection is taken by demurrer." *Hazleton* v. *Bank*, 32 Wis. 34; *Teetshorn* v. *Hull*,

30 Wis. 162; *White* v. *Spencer*, 14 N. Y. 247; *Cady* v. *Allen*, 22 Barb. 388; *St. John* v. *Northrup*, 23 Barb. 25.

This is a wholesome rule in the practice.

If the pleading is indefinite or uncertain, section 129, Code Civil Proc., provides a remedy by authorizing the court to require the pleading to be made definite and certain by amendment. And for courts to be required to pause in the midst of a trial, and examine, interpret, and construe the allegations of a pleading, when the conclusion reached would very likely involve litigants in great and unnecessary expense (by way of preparation for trial) and perhaps serious delay in the adjudication of the rights of parties, when the same questions can much more satisfactorily to both courts and parties be determined before issue is joined upon the facts stated in the case, is a practice not to be commended by the court.

Applying, then, the rule of construction applicable, when presented by a demurrer *ore tenus*, we conclude the allegations of the complaint state facts sufficient to constitute cause of action. This court has said, in *Clay Co.* v. *Simonsen*, 1 Dak. 429: "There are three acts of omission on the part of the treasurer, specifically mentioned in the statute, which constitute a breach of his official bond; for any one of which, upon its occurrence, suit may be brought. These are—*First*, if he shall fail to make a return; *second*, fail to make settlement; or, *third*, fail to pay over all money with which he may stand charged at the time and in the manner prescribed by law."

Defendant Mansfield is expressly charged in the complaint with having failed and refused to settle with the board of county commissioners his accounts as treasurer, at the times required by law; and, *secondly*, with neglecting and refusing to pay over to his successor in office the sums appearing from the records as a balance belonging to the county, and which is the amount in controversy in this action.

Section 95 of the Political Code provides, among other things, that at the regular meeting of the board of county commissioners in January and July of each year, and at such other times

as they may direct, the county treasurer shall settle with them his accounts as treasurer, and for that purpose shall exhibit to them all his books, accounts, moneys, etc.,   *   *   *   and if found correct, the accounts shall be so certified; if not, he shall be liable on his bond.

The meaning of such language is surrounded by no cloud of uncertainty. Prompt and affirmative action on the part of county treasurers is demanded by this provision at these biennial sessions. It is incumbent upon them to proceed in the plain performance of their duties, make their exhibits of books, accounts, and moneys, and make their settlement; and in case of failure of such action it becomes the duty of the board of county commissioners, for the proper protection of the rights of the public, to institute proceedings upon the official bond, as was done in this case.

Again, section 14, c. 5, Pol. Code, provides: "Every officer elected or appointed under the laws of the territory, on going out of office, at the expiration of his term thereof, shall deliver to his successor in office all the public moneys, books, records, accounts, papers, and documents in his possession belonging to or appertaining to such office."

At the allegations of the complaint, drawn evidently to meet this provision in the Code, is the chief attack in support of the demurrer *ore tenus.*

It is unnecessary to inquire what would have been the effect of a demurrer before answer to that portion of the complaint, if it had been thus attacked, as a separate cause of action; but, as we have seen, some of the allegations were well pleaded, and for that reason the court below was correct in overruling the objection to the evidence.

It would seem the board of county commissioners, instead of treating Mansfield's failure to qualify as creating a vacancy, which it was their duty to fill, were unnecessarily attempting to follow section 52, c. 21, Pol. Code, relating to delinquent treasurers,—a proceeding complete in itself, but not necessarily invoked to meet the case of a treasurer going out of office, and

failing to account.   The action of the board in this regard was doubtless confusing, and it is not surprising that confusion should follow the pleader in attempting to state facts sufficient to constitute a cause of action, when the record of the meeting of January 8, 1885, shows a vacancy in the office of treasurer, at a time previous to the action of the board removing Mansfield, who was already out, by his own voluntary act.   Under section 11, c. 5, Pol. Code, there was clearly a vacancy in the office when Mansfield declined to qualify, and waived the statutory 10 days for that purpose, and that was made a matter of record.   Mansfield's duty was then plain and unmistakably indicated by the following fourteenth section, which required him, as a retiring officer, to deliver to his successor all public moneys, etc.

It is strenuously insisted, however, that Mansfield could not be required to turn the property of the office over to Webster, his successor, because Webster had not been regularly and legally appointed, and was not, therefore, legally his successor in office ; and *Supervisors of Washington Co.* v. *Semler,* 41 Wis. 374, is relied upon as authority for such position.   This claim is made, presumably, upon the theory that the acts of the commissioners in removing Mansfield, and ordering suit to be instituted, were irregular; but, as we have indicated, there being clearly a vacancy in the office before any such action by the board was taken, their proceedings in this respect were not very material.   It may be observed, however, in passing, that the Wisconsin case was predicated upon a removal statute, in which case a demand by the successor was required by law before action could be instituted.   See section 181, Taylor's St. Wis.

Under our Code no demand is required either in case of removal, expiration of term of office, or a vacancy otherwise created.

The errors assigned as to the rulings of the trial court in admitting the testimony tending to show demand were therefore without prejudice, if, in fact, error was committed, which we do not decide.

Concluding, then, that a vacancy existed on the 8th day of January, 1885, at the time Mansfield declined to qualify as required by law, waiving his statutory time for that purpose, it was then, at that time, clearly the duty of the board to fill the vacancy by appointment, which the record shows they did. Nothing was then left for Mansfield to do but to turn over at once "all public moneys, books, records, accounts, papers, and documents in his possession belonging or appertaining to such office." Section 14, Pol. Code, c. 5.

And upon his failure to do this a cause of action existed upon his official bond. In this view of the case no question of estoppel was involved, and none will be considered. Affirmed.

All the justices concurring except THOMAS, J., who did not sit in the case.